**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL HOME LOAN BANK OF CHICAGO, | Case No.: 1:10-CV-07560-MIS-SEC |
| Plaintiff, | Judge: Hon. Milton I. Shadur<br>Magistrate Judge: Hon. Susan E. Cox |
| vs. | |
| BANC OF AMERICA FUNDING CORPORATION, et al., | |
| Defendants. | |

**PLAINTIFF'S MOTION TO REMAND**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    THE COMPLAINT ............................................................................................ 2

III.   ARGUMENT .................................................................................................... 3

     A.    Standard of Review ................................................................................. 3

     B.    This Court Lacks Diversity Jurisdiction Because, as a Federally
           Chartered Corporation, the Bank Is Not a Citizen of Any State .......................... 3

          1.    Congress Has Not Designated the Bank a Citizen of Any
                 State for the Purposes of Diversity Jurisdiction ........................................ 4

          2.    The Bank's Activities Are Not Localized in One State ........................... 6

     C.    The "Sue and Be Sued" Clause in the Bank's Charter Does Not
           Create Original Federal Jurisdiction .................................................... 11

          1.    The Phrase "Court of Competent Jurisdiction" Precludes
                 the Bank's Charter from Independently Conferring Federal
                 Jurisdiction ............................................................................... 11

          2.    Defendants Rely on a Mistaken Reading of *Red Cross* .......................... 14

          3.    *Pirelli* Is Not Persuasive Authority ....................................................... 16

          4.    Pirelli Has Been Rejected by Courts That Have Carefully
                 Evaluated "Sue and Be Sued" Clauses Analogous to the
                 Provision in the Bank's Charter ............................................................. 17

          5.    Neither the Bank, Nor This Court, Are Bound By Legal
                 Arguments Made by a Distinct Entity in a Distinct Legal
                 Proceeding .................................................................................. 18

     D.    The Bank's Action is Not "Related To" Any Bankruptcy
           Proceeding ......................................................................................... 19

          1.    Federal Jurisdiction Does Not Lie Under § 1334(b) .............................. 20

          2.    Even if This Court Found This Action To Be "Related To"
                 a Bankruptcy Proceeding, It Should Remand on Equitable
                 Grounds .................................................................................... 22

          3.    The Court Should Remand Because It Must Abstain From
                 Exercising Jurisdiction Pursuant to Section 1334(c)(2) ......................... 24

IV.    CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

<u>Cases</u>

*African Trade & Info. Ctr., Inc. v. Abromaitis*,
    294 F.3d 355 (2d Cir. 2002)...................................................................................... 16

*American National Red Cross v. S.G.*,
    505 U.S. 247 (1992)....................................................................................... passim

*Auriemma Consulting Grp., Inc. v. Universal Sav. Bank*,
    367 F. Supp. 2d 311 (E.D.N.Y. 2005) ......................................................... 6, 8, 9

*Bank of U.S. v. Deveaux*,
    9 U.S. 61 (1809).................................................................................................. 11

*Bankers Trust Co. v. Tex. & Pac. Ry. Co.*,
    241 U.S. 295 (1916)......................................................................................... 4, 16

*Bates & Rogers Constr. Corp.*,
    97 B.R. 905 (N.D. Ill. 1989) ............................................................................. 24

*Baxter Healthcare Corp. v. Hemex Liquidation Trust*,
    132 B.R. 863 (N.D. Ill. 1991) ........................................................................... 22

*Breuer v. Jim's Concrete of Brevard, Inc.*,
    538 U.S. 691 (2003)........................................................................................... 12

*Browning v. Navarro*,
    743 F.2d 1069 (5th Cir. 1984) .......................................................................... 22

*Burton v. U.S. Olympic Comm.*,
    574 F. Supp. 517 (C.D. Cal. 1983) ................................................................... 10

*C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*,
    891 F. Supp. 371 (N.D. Tex. 1994) *aff'd*, 58 F.3d 636 (5th Cir. 1995) ............... 17

*Califano v. Sanders*,
    430 U.S. 99 (1977)............................................................................................ 12

*Connelly v. Fed. Nat'l Mortg. Ass'n*,
    251 F. Supp. 2d 1071 (D. Conn. 2003).............................................................. 17

*Deveaux*,
    9 U.S. 61 (1809)................................................................................................ 13

*D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*,
    315 U.S. 447 (1942).......................................................................................... 15

*Engelmeyer v. Prod. Credit Ass'n of Midlands*,
   652 F. Supp. 1235 (D.S.D. 1987) ......................................................... 6

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005) ............................................................................ 12

*Fed. Home Loan Bank of Pittsburgh v. J.P. Morgan Sec. Inc.*,
   No. 09-1421, 2009 WL 5178904 (W.D. Pa. Dec. 21, 2009) ................... 3

*Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.*,
   No. 10-0139, 2010 WL 3662345 (W.D. Wash. Sept. 1, 2010)............................................. 1

*Fed. Home Loan Bank of Seattle v. Deutsche Bank Sec., Inc.*,
   No. 10-0140, --- F. Supp. 2d ----, 2010 WL 3512503 (W.D. Wash. Sept. 1,
   2010) ............................................................................................... passim

*Fed. Nat'l Mortg. Ass'n v. Sealed*,
   457 F. Supp. 2d 41 (D.D.C. 2006) ...................................................... 17

*Fed. Nat'l Mortg. Ass'n. v. De-Savineau*,
   No. 10-1106, 2010 WL 3397027 (C.D. Cal. Aug. 25, 2010) .................. 18

*Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*,
   272 F.2d 453 (3rd Cir. 1959) ................................................................ 6

*Gladys McCoy Apartments, Ltd. P'ship v. State Farm Fire & Cas. Co.*,
   No. 09-981, 2010 WL 1838941 (D. Or. Mar. 30, 2010)....................... 10

*Grun v. Countrywide Home Loans, Inc.*,
   No. 03-0141, 2004 WL 1509088 (W.D. Tex. July 1, 2004)................... 17

*Hertz Corp. v. Friend*,
   130 S. Ct. 1181 (2010)........................................................................... 9

*Hukic v. Aurora Loan Servs.*,
   588 F.3d 420 (7th Cir. 2009) ................................................... 4, 5, 6, 10

*Iceland Seafood*,
   285 F. Supp. 2d 719 (E.D. Va. 2003) ..................................... 7, 8, 9, 10

*In re Bill Cullen Elec. Contracting Co.*,
   160 B.R. 581 (Bankr. N.D. Ill. 1993) .................................................. 24

*In re Chapman*,
   132 B.R. 153 (Bankr. N.D. Ill. 1991) .................................................. 25

*In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*,
   6 F.3d 1184 (7th Cir. 1993) ................................................................ 22

*In re Demert & Dougherty, Inc.*,
   No. 01-7289, 2001 WL 1539063 (N.D. Ill. Nov. 30, 2001) ................................ 24

*In re Fannie Mae 2008 Securities Litigation*,
   No. 08-7831, 2009 WL 4067266 (S.D.N.Y. 2009) .............................................. 17

*In re FedPak Sys., Inc.*,
   80 F.3d 207 (7th Cir. 1996) ............................................................................... 20

*In re Green*,
   2109 B.R. 556, 560 (Bankr. N.D. Ill. 1997) ....................................................... 21

*In re Kubly*,
   818 F.2d 643 (7th Cir. 1987) ............................................................................. 20

*In re Mid-Am. Waste Sys., Inc.*,
   228 B.R. 816 (Bankr. D. Del. 1999) .................................................................. 19

*Kalamazoo Realty Venture Ltd. P'ship v. Blockbuster Entm't Corp.*,
   249 B.R. 879 (N.D. Ill. 2000) ........................................................................... 21

*Klohr v. Martin & Bayley, Inc.*,
   No. 05-0456, 2006 WL 1207141 (S.D. Ill. May 4, 2006) ............................. 22, 24

*Knuckles v. RBMG, Inc.*,
   481 F. Supp. 2d 559 (S.D. W. Va. 2007) ................................................. 13, 16, 17

*Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg.*,
   415 F. Supp. 2d 636 (E.D. Va. 2006) ................................................................ 10

*Loyola Fed. Sav. Bank v. Fickling*,
   58 F.3d 603 (11th Cir. 1995) ....................................................................... 6, 8, 9

*Osborn v. Bank of U.S.*,
   22 U.S. 738 (1824) ........................................................................................... 15

*Peoples Mortg. Co. v. Fed. Nat'l Mortg. Ass'n*,
   856 F. Supp. 910 (E.D. Pa. 1994) ..................................................................... 17

*Petrousky v. Civil Air Patrol, Inc.*,
   No. 97-1708, 1998 WL 213726 (N.D.N.Y. Apr. 10, 1998)................................. 10

*Pio v. Gen. Nutrition Cos.*,
   No. 06-2140, 2006 WL 3147721 (N.D. Ill. Oct. 31, 2006) ................................ 22

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Federal
   National Mortgage Ass'n v. Raines*,
   534 F.3d 779 (D.C. Cir. 2008) ........................................................... 14, 15, 16, 17

*Poindexter v. Nat'l Mortg. Co.*,
  No. 94-5814, 1995 WL 242287 (N.D. Ill. Apr. 24, 1995) .................................................... 13

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,
  624 F. Supp. 858 (E.D. Pa. 1985) ....................................................................................... 5

*Rincon Del Sol, LLC v. Lloyd's of London*,
  709 F. Supp. 2d 517 (S.D. Tex. 2010) ............................................................. 12, 16, 17, 18

*Roe v. O'Donohue*,
  38 F.3d 298 (7th Cir. 1994), abrogated *on other grounds*, 526 U.S. 344 (1999) ................. 14

*Schur v. L.A. Weight Loss Ctrs., Inc.*,
  577 F.3d 752 (7th Cir. 2009) ................................................................................................ 3

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................................ 3

*U.S. v. Cotton*,
  535 U.S. 625 (2002) ............................................................................................................ 19

*Wachovia Bank v. Schmidt*,
  546 U.S. 303 (2006) .............................................................................................................. 9

*Western Sec. Co. v. Derwinski*,
  937 F.2d 1276 (7th Cir. 1991) ........................................................................................... 13

## **Federal Statutes**

5 U.S.C. § 702 ................................................................................................................... 12

11 U.S.C. § 510(b) ...................................................................................................... 19, 21

12 U.S.C. § 1432(a) ........................................................................................... 2, 5, 11, 12

12 U.S.C. § 1452 ............................................................................................................... 25

12 U.S.C. § 1452(f) .......................................................................................................... 18

12 U.S.C. § 1723a(a) ................................................................................................... 13, 18

28 U.S.C. § 1332 ............................................................................................................. 2, 4

28 U.S.C. § 1332(a)(1) ................................................................................................... 3, 4

28 U.S.C. § 1332(c) ....................................................................................................... 9, 10

28 U.S.C. § 1332(c)(1) ..................................................................................................... 10

28 U.S.C. § 1334 ................................................................................................................ 24, 25

28 U.S.C. § 1334(b) ............................................................................................................ passim

28 U.S.C. § 1334(c)(1) ....................................................................................................... 20, 25

28 U.S.C. § 1334(c)(2) ....................................................................................................... 24

28 U.S.C. § 1452 ................................................................................................................ 25

28 U.S.C. § 1452(b) ........................................................................................... 20, 22, 24, 25

29 U.S.C. § 216 .................................................................................................................. 13

29 U.S.C. § 216(b) ............................................................................................................. 13

36 U.S.C. § 2 (1992) .......................................................................................................... 14

36 U.S.C. § 300105(a)(5) ................................................................................................... 14

38 U.S.C. § 1820(a)(1) ....................................................................................................... 13

**State Statutes**

815 ILCS § 5/12 .................................................................................................................. 1

## I.    INTRODUCTION

Plaintiff Federal Home Loan Bank of Chicago ("the Bank" or "FHLBC") filed this action in the Circuit Court of Cook County, Illinois on October 15, 2010 (the "Action").  This Action alleges only state law claims under the Illinois Securities Law, 815 ILCS § 5/12, and common law negligent misrepresentation.  Plaintiff asserts no federal causes of action.

Defendants removed the action to this Court on November 23, 2010, relying on three invalid theories of federal jurisdiction.  *See* Dkt. No. 1.  Because all three grounds for removal are invalid, the Bank respectfully requests that the Court remand this action to state court. Remand would not stake new ground or make new law.  Indeed, these precise issues recently were decided in favor of the Federal Home Loan Bank of Seattle ("FHLB Seattle") in similar litigation brought by that bank against many of the same Defendants here.  *Fed. Home Loan Bank of Seattle v. Deutsche Bank Sec., Inc*., No. 10-0140, --- F. Supp. 2d ----, 2010 WL 3512503, at *1 (W.D. Wash. Sept. 1, 2010) ("*FHLB Seattle PLMBS Litig.*").[1]  Plaintiff respectfully submits that the Defendants' efforts to rehash the same unsuccessful arguments should be rejected.  Like the FHLB Seattle PLMBS litigation, this case, too, should proceed in state court where it was filed.

---

[1] On the same day that it remanded the FHLB Seattle action against Deutsche Bank, the Western District of Washington also remanded ten other FHLB Seattle actions.  In doing so, the court rejected all three bases of federal jurisdiction Defendants allege here.  *See Fed. Home Loan Bank of Seattle v. Bank of Am. Sec., LLC,* No. 10-0147 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.,* No. 10-0139, 2010 WL 3662345 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. Bear, Stearns & Co., Inc.,* No. 10-0151 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. Countrywide Sec. Corp.,* No. 10-0148 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. Credit Suisse Sec. (USA) LLC,* No. 10-0167 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. Goldman, Sachs & Co.,* No. 10-0177 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. Merrill Lynch Pierce Fenner & Smith Inc.,* No. 10-0150 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. Morgan Stanley & Co., Inc.,* No. 10-0132 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. RBS Sec., Inc.,* No. 10-0168 (W.D. Wash. Sept. 1, 2010); *Fed. Home Loan Bank of Seattle v. UBS Sec.,* No. 10-0146 (W.D. Wash. Sept. 3, 2010).

While the case law interpreting federal jurisdiction tends toward the arcane, the defects in Defendants' arguments are frankly, quite simple. Defendants argue that this Court has diversity jurisdiction because no Defendant is a citizen of Illinois for purposes of 28 U.S.C. § 1332. However, because the Bank is a federally chartered corporation whose activities are not "localized" in one state, the Bank is not a citizen of any state, and thus this court lacks diversity jurisdiction.

Defendants also argue that the "sue and be sued" clause in the Bank's legislative charter automatically confers federal jurisdiction by virtue of its specific reference to federal courts. This theory is invalid because the Bank's charter does not *create* jurisdiction, but rather permits the bank to "sue or be sued" only in courts that already are "*of competent jurisdiction*." 12 U.S.C. § 1432(a). Because this clause requires a court to look elsewhere for the source of its federal jurisdiction, § 1432(a) does not provide Defendants with a valid basis for removal.

Finally, Defendants argue that this Court has "related to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b). However, because this action cannot have any direct effect on any of the identified bankruptcy proceedings, this action is not "related to" a bankruptcy proceeding and thus this Court lacks jurisdiction under § 1334(b).

## II.   THE COMPLAINT

This is an action for rescission and damages under state law based on Defendants' sale to the Bank of bonds backed by residential mortgages, known as "private label mortgage backed securities" ("PLMBS").[2] Plaintiff alleges that Defendants did not tell the Bank the truth about the loans that comprise the mortgage pools securing the PLMBS when they sold the bonds. As a result of Defendants' misrepresentations and omissions of material fact, the Bank has suffered material losses on these bonds.

---

[2] All Defendants have been served. *See* Dkt. No. 121.

Plaintiff is a bank created by the Federal Home Loan Bank Act of 1932. The FHLB System is comprised of twelve FHLBanks,[3] each serving a distinct geographic district.[4] Under its Organization Certificate, the Bank is to operate in FHLB District 7, which comprises the states of Illinois and Wisconsin. In addition to its work in those two states, the Bank operates a multi-billion dollar nationwide Mortgage Partnership Finance® Program, under which the Bank acts as master servicer and custodian for mortgages in every state in the United States and holds for investment over $20 billion in loans, 89% of which are secured by mortgages on properties outside of Illinois. *See* Section III.B.2 *infra*. Additionally, the vast majority of the Bank's funding is derived from its sale of debt outside of Illinois. *See id.*

## III.   ARGUMENT

### A.   Standard of Review

Subject matter jurisdiction is a threshold question addressing the Court's "statutory or constitutional power to adjudicate [a] case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). When a case has been removed from state court, "[t]he party seeking removal has the burden of establishing federal jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citation omitted).

### B.   This Court Lacks Diversity Jurisdiction Because, as a Federally Chartered Corporation, the Bank Is Not a Citizen of Any State

Defendants' attempt to invoke diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) fails because the Bank is not a citizen of any state. Defendants argue that this Court has jurisdiction because no defendant is a citizen of Illinois. The success of this claim, however,

---

[3] In addition to the eleven remanded FHLB actions discussed *supra*, n.1, the Western District of Pennsylvania also recently remanded four actions initiated by the FHLB of Pittsburgh regarding its PLMBS, finding that the actions belonged in state court, where they had been filed. *See, e.g., Fed. Home Loan Bank of Pittsburgh v. J.P. Morgan Sec. Inc.*, No. 09-1421, 2009 WL 5178904 (W.D. Pa. Dec. 21, 2009).

[4] *See* http://www.fhfa.gov/Default.aspx?Page=22 (describing the FHLBank System).

hinges on the validity of Defendants' assertion that the Bank is a citizen of Illinois. This claim ultimately fails because, as a federally chartered corporation whose activities are not localized in any one state, the Bank is not a citizen of any state. Thus, this is not a suit "between citizens of different states" as required by § 1332(a)(1). *See Bankers Trust Co. v. Tex. & Pac. Ry. Co.*, 241 U.S. 295, 309-10 (1916).

A federally chartered corporation that conducts activities in different states is not a citizen of any state for the purpose of § 1332 jurisdiction. *Id*. In *Bankers Trust*, the Supreme Court reasoned that:

> [The corporation] was incorporated under acts of Congress, not under state laws; and its activities and operations were not to be confined to a single state, but to be carried on, as in fact they are, in different states. . . . Nor has Congress said that it shall be regarded as possessing state citizenship for jurisdictional purposes, as is done in respect of national banks . . . .

*Id. See also Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 428 (7th Cir. 2009) (interpreting *Bankers Trust* to have "held that a corporation chartered pursuant to an Act of Congress with activities in different states . . . was not a citizen of any state for diversity jurisdiction purposes").

Although courts have interpreted *Bankers Trust* to have carved out two exceptions to the general rule that a federally chartered corporation is not a citizen of any state, neither exception applies to the Bank. First, Congress has not designated the Bank as a citizen of a state for the purposes of diversity jurisdiction. Second, the Bank's activities are not localized in Illinois.

### 1. Congress Has Not Designated the Bank a Citizen of Any State for the Purposes of Diversity Jurisdiction

Under narrow circumstances not applicable here, a federally chartered corporation may be a citizen of a state if Congress has so specified. *See, e.g.*, *Hukic*, 588 F.3d at 428 (noting that federally chartered corporations are not citizens of any state "unless a specific statutory provision dictate[s] otherwise"). To try to fit under this exception, Defendants attempt a sleight of hand by

asserting that 12 U.S.C. § 1432(a) "incorporated [the bank] as a 'body corporate' of the State of Illinois." Yet, although § 1432(a) states that each "bank shall become . . . a body corporate," the provision **never** mentions the State of Illinois and **never** states that the Bank would be a "body corporate" of any state. Defendants' out-of-context argument notwithstanding, Congress has **not** conferred state citizenship upon the Bank.

Defendants' reliance on the Bank's organization certificate is also misplaced because the case law makes clear that the *statute itself* must designate the entity as a citizen of a particular state.[5] Assuming, *arguendo*, that an organization certificate may designate a federally chartered entity as a state citizen, the Bank's organization certificate does not do so. Upon assessing FHLB Seattle's substantially identical organization certificate, Judge Martinez held, "[i]n light of the 12-District scheme, the certificate's language is too vague to designate Plaintiff a citizen of Washington State." *FHLB Seattle PLMBS Litig.*, 2010 WL 3512503, at *5. The certificate's language failed because it located the Bank's "principal office . . . in the City of Spokane, State of Washington, *or at such other city as the FHLB Board may from time to time determine*." *Id.* (emphasis added). Because the Bank's certificate contains substantially identical language, it likewise is "too vague" to confer citizenship in Illinois. *See* Organization Certificate, Dkt. No. 1-4, Ex. B, at 1 ¶ 2 (locating the Bank's "principal office . . . in the City of Evanston, State of Illinois, *or at such other city as the Federal Home Loan Bank Board may from time to time determine*" (emphasis added)).

---

[5] *See Hukic*, 588 F.3d at 428 ("[U]nless *a specific statutory provision dictated otherwise*, a federally chartered savings association was not a citizen of any state . . . ."); *Iceland Seafood Corp. v. Nat'l Consumer Coop. Bank*, 285 F. Supp. 2d 719, 723 (E.D. Va. 2003) ("If the *chartering statutes expressly provide* for citizenship in a particular state, or incorporate the entity as a 'body corporate' of a particular state, then a federally chartered corporation . . . may have citizenship for diversity purposes." (emphasis added)); *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 624 F. Supp. 858, 861 (E.D. Pa. 1985) (a federal corporation "has no state citizenship for jurisdictional purposes *unless Congress so enacts*" (emphasis added)).

## 2.     The Bank's Activities Are Not Localized in One State

The second exception to the presumption of national citizenship is also inapplicable because the Bank's activities are not "localized in one state." *Hukic*, 588 F.3d at 428. When the Third Circuit first recognized the "localization" exception, it was addressing "a peculiarly local institution of a single community in the state of New Jersey." *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union,* 272 F.2d 453, 454-55 (3rd Cir. 1959). The local credit union at issue in *Lake Hiawatha*, however, bears no comparison to the Bank here in scope or activities.[6]

Although the Eleventh Circuit opined that *Lake Hiawatha* "is too restrictive an application of the localization test," even the Eleventh Circuit's "more expansive investigation," *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995), would not permit a conclusion that the Bank is a citizen of Illinois. In *Loyola Federal*, for example, the court found the federally-chartered bank to be "localized" in Maryland because "[o]ver two-thirds of [Loyala's] residential mortgages were located in Maryland" and "[t]wo-thirds of the loans that it serviced were secured with property located in Maryland." *Id.* Thus even under the Eleventh Circuit's "more expansive" version of the "localization" test, over two-thirds of an entity's business activities must occur in the same state as the headquarters to satisfy the test. The Bank's business activities are not nearly so concentrated in Illinois.

Although Defendants' removal papers cite the percentages of the Bank's officers, members, and directors located in Illinois, these formalities stop well short of painting a full picture of the scope of the Bank's business activities. In addition to providing credit services to

---

[6] Subsequent to *Lake Hiawatha*, the federal courts routinely find the localization exception inapplicable where a federally chartered corporation is organized to do business in more than one state. *See, e.g.*, *Burton v. U.S. Olympic Comm.*, 574 F. Supp. 517, 522 n.7 (C.D. Cal. 1983) ("localization requires confinement of activities, either by charter or in fact, *to a single state*" (emphasis added)); *accord Engelmeyer v. Prod. Credit Ass'n of Midlands*, 652 F. Supp. 1235, 1236 (D.S.D. 1987); *Auriemma Consulting Grp., Inc. v. Universal Sav. Bank*, 367 F. Supp. 2d 311, 313 (E.D.N.Y. 2005). *See also Hukic*, 588 F.3d at 428 (summarizing case law on this point).

6

its members, 34% of which are located in Wisconsin, the Bank has entered into bond purchase

agreements with state housing authorities in both Wisconsin and Illinois.  As of September 30,

2010, commitments with the Wisconsin Housing and Economic Development Authority were

$174 million, over three times greater than the Bank's commitments with the Illinois Housing

Development Authority.  Declaration of Roger Lundstrom ("Lundstrom Decl.") ¶¶ 4, 6.

More fundamentally, the Bank is a national entity with access to nationwide resources

and which conducts substantial business beyond the borders of Illinois.  For example, as a

federal entity associated with the FHLB system, the Bank receives the vast majority of its

funding through its access to international debt markets.  Specifically, the Bank's primary source

of funding is the sale to the public of FHLB debt instruments, known as consolidated obligations,

which are the joint and several liability of all twelve Federal Home Loan Banks.  *Id*. ¶ 7.

Furthermore, the FHLB Office of Finance in Virginia, which is a joint office of FHLBC and the

other 11 Federal Home Loan Banks, issues and services all debt securities for the FHLBs.  *Id*. ¶ 7

& Ex. 1 at 28.  For the nine months ended September 30, 2010, the Bank's net proceeds from the

OF's issuance of these consolidated obligations totaled $988 billion.  *Id*. ¶ 7 & Ex. 2 at 6.  As of

September 30, 2010, the consolidated obligations for which the Bank was primarily liable totaled

over $79 billion, accounting for 92.5% of the Bank's total liabilities.  *Id*., Ex. 2 at 3.  Access to

national resources like these is a recognized factor weighing against "localization."  *See Iceland

Seafood*, 285 F. Supp. 2d at 725.

Additionally, since 1997, the Bank has operated a multi-billion dollar nationwide

Mortgage Partnership Finance® (MPF®) Program, under which the Bank has acquired mortgage

loans originated by and through its members, as well as the members of the Federal Home Loan

Bank of Dallas, and has acquired participation interests in loans acquired by nine Federal Home

Loan Banks from or through their members. Lundstrom Decl. ¶ 8. Through the MPF Program, the Bank has acquired, and currently holds, MPF mortgage loans secured by properties in all 50 states, Washington D.C. and Puerto Rico. *Id*. ¶ 8 & Ex. 1 at 79. As of September 30, 2010, the largest concentration of MPF loans was secured by properties located in Wisconsin, representing 17% of the par value of the Bank's MPF loans. *Id*. ¶ 8. In fact, 89% of all MPF loans held by the Bank were secured by properties outside the state of Illinois. *Id*. This is particularly relevant because the distribution of secured collateral is a key factor in determining whether a banking institution is localized. *Compare Loyola Fed.*, 58 F.3d at 606 (finding Loyola to be "localized" because over two thirds of its secured property was within the same state as its headquarters) *with Iceland Seafood*, 285 F. Supp. 2d at 725 (holding that NCB's activities were not "localized" because "NCB made loans to cooperatives in New Jersey, New York, California, Michigan, and Pennsylvania" and because "its secured collateral is similarly disbursed").

The widespread geographic distribution of the Bank's MPF loans weighs heavily against "localization" because these mortgages constitute a substantial portion of the Bank's assets and generate a significant share of the Bank's income.[7] As of September 30, 2010, the Bank held $20.13 billion in MPF loans, which accounted for nearly 23% of the Bank's total assets. Lundstrom Decl. ¶ 9. Moreover, for the nine months ended September 30, 2010, the MPF loans had generated $751 million in interest income, representing 36% of the Bank's total interest income. *Id*.

The Federal Home Loan Banks of Boston, Des Moines, New York, Pittsburgh and Topeka, which cover twenty states and two territories, also actively participate in the Bank's

---

[7] The Bank's MPF website also makes perfectly clear its intent to offer its MPF product to members of five other Federal Home Loan Banks located in twenty-two states. http://www.fhlbmpf.com/about/how.asp. *See Auriemma Consulting*, 367 F. Supp. 2d at 314 (holding that a bank's multi-state activities were not localized in part because its "website makes perfectly clear [its intent] to exercise ... powers granted by its charter ... to do business on a nationwide basis").

MPF Program. *Id.* ¶ 10. FHLBC has entered into agreements under which the Bank provides programmatic and operational support to these other FHLBs in its role as MPF Provider. In this role, the Bank establishes the structure of the MPF products offered by these other FHLBS, as well as the eligibility requirements for FHLB members to participate in the MPF Program. *Id.* The Bank also is the master servicer and master custodian of all MPF loans – including those of all nine FHLBs in which the Bank has purchased participation interests – and maintains the infrastructure through which the other FHLBs may fund or purchase MPF loans through their members.[8] *Id.*

In short, the distribution of the Bank's business activities is far more extensive than anything the Eleventh Circuit considered in its "more expansive" version of the "localization" test in *Loyola Federal*. 58 F.3d at 606. The geographic breadth of FHLBC's transactions, in conjunction with the fact that as of year-end 2009, 34% of its member institutions are located outside of Illinois, simply precludes a meaningful comparison between the Bank and Loyola. Because substantially more than one-third of the Bank's business activity occurs outside Illinois, the Bank is not "localized" according to any interpretation of the "localization" test.

The fact that the Bank's headquarters is located in Illinois does not alter this conclusion. *See Iceland Seafood*, 285 F. Supp. 2d at 725. Similarly, Defendant's citation of the Supreme Court's "nerve center" analysis in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), is inapposite because that opinion specifically interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c).[9] As the cases cited herein demonstrate, locating an entity's "principal place of

---

[8] In 2008, the Bank also introduced the MPF Xtra® product under which it purchases MPF loans from its members and members of participating FHLBs and concurrently sells them to Fannie Mae. Lundstrom Decl. ¶ 11. The Bank acts as master servicer for the MPF loans owned by Fannie Mae, which as of Sept. 30, 2010, are secured by properties in 48 states plus the District of Columbia. *Id.*

[9] Courts almost universally have held § 1332(c) inapplicable to federally chartered entities. *See, e.g.*, *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) ("State banks, usually chartered as corporate

business" is an inquiry distinct from – and far less intensive than – determining whether an entity is "localized." *See also Burton*, 574 F. Supp. at 522 n.7*v. U.S. Olympic Comm.* ("the tests for localization and principal place of business have not been assimilated. . . . maintenance of a principal place of business does not in and of itself amount to localization"); *accord Iceland Seafood*, 285 F. Supp. 2d at 725-26.[10]

In determining that FHLB Seattle was not "localized," the Western District of Washington relied on "the FHLB charter's 12-District scheme" and FHLB of Seattle's organization certificate in determining that "the Bank has only national citizenship." *FHLB Seattle PLMBS Litig.*, 2010 WL 3512503, at *5. The court assessed "the relationship between [the] federal organization's charter, certificate, and business activities," and relied on several cases that declined to find localization where a federal entity's charter did not indicate an intent to localize in a single state. *Id.*

Like those of FHLB Seattle, the Bank's charter and organization certificate do not indicate an intent to localize in a single state. The Bank's organization certificate locates the Bank in District 7, which comprises the states of Illinois and Wisconsin. (Compl. ¶ 22). Accordingly, the Bank serves the needs of member institutions in both states, which requires

---

bodies by a particular State, ordinarily fit comfortably within [§ 1332(c)'s] prescription. *Federally chartered national banks do not, for they are not incorporated by "any State."* (emphasis added)); *Hukic*, 588 F.3d at 428 ("[M]any courts concluded that 28 U.S.C. § 1332(c)(1) applied only to state corporations and not to federally chartered corporations or associations."); *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg.*, 415 F. Supp. 2d 636, 639 (E.D. Va. 2006) ("[T]he lower courts have uniformly construed § 1332(c) to apply only to companies incorporated under state law and thus courts continue to adhere to the general rule that federally chartered companies are ineligible for diversity jurisdiction."); *Gladys McCoy Apartments, Ltd. P'ship v. State Farm Fire & Cas. Co.*, No. 09-981, 2010 WL 1838941, at *3 (D. Or. Mar. 30, 2010) ("State Farm's argument [that 1332(c) is applicable to federally chartered corporations] is unavailing. Even after the enactment of § 1332(c), courts have expressly declined to apply § 1332(c) to a federally chartered corporation."); *Petrousky v. Civil Air Patrol, Inc.*, No. 97-1708, 1998 WL 213726, at *1 (N.D.N.Y. Apr. 10, 1998) ("When a corporation is federally chartered, however, citizenship is not governed by 28 U.S.C. § 1332(c).").

[10] Nor is it sufficient that the Bank's name includes the city of Chicago, since the scope of its activity is limited neither to that city nor the state of Illinois. *See Iceland Seafood*, 285 F. Supp. 2d at 726.

it to conduct substantial business in Wisconsin. Lundstrom Decl. ¶ 3. Like FHLB Seattle, the

Bank's organization certificate provides that the Bank's office may be moved to "such other city

as the Federal Home Loan Bank Board may from time to time determine." *See* Organization

Certificate, Dkt. No. 1-4, Ex. B, at 1 ¶ 2.

## C.     The "Sue and Be Sued" Clause in the Bank's Charter Does Not Create Original Federal Jurisdiction

The Bank's federal charter does not provide an independent source of federal subject

matter jurisdiction, but rather merely recognizes that the Bank may "sue and be sued" in federal

court if that court is already "of competent jurisdiction." Congress often includes such "sue and

be sued" provisions among the list of activities in which federally chartered organizations are

permitted to engage.[11] Specifically, the Federal Home Loan Bank Act of 1932 provides that the

Bank "shall have power to . . . sue and be sued, [] complain and [] defend, in any court of

competent jurisdiction, State or Federal." 12 U.S.C. § 1432(a). Defendants mistakenly interpret

this charter to automatically confer federal subject-matter jurisdiction over any case to which the

Bank is a party. However, Defendants arrive at this conclusion only through oversight of the

words "court of competent jurisdiction," misinterpretation of the Supreme Court's decision in

*American National Red Cross v. S.G.*, 505 U.S. 247 (1992), and disregard of the vast weight of

authority that has rejected Defendants' position.

### 1.     The Phrase "Court of Competent Jurisdiction" Precludes the Bank's Charter from Independently Conferring Federal Jurisdiction

Section 1432(a)'s requirement that courts be "of competent jurisdiction" signals to

federal district courts that, as courts of "limited jurisdiction" that "possess only that power

---

[11] *See Bank of U.S. v. Deveaux*, 9 U.S. 61, 85-86 (1809) ("This power, if not incident to a corporation, is conferred by every incorporating act, and is not understood to enlarge the jurisdiction of any particular court, but to give a capacity to the corporation to appear, as a corporation, in any court which would, by law, have cognisance of the cause, if brought by individuals.").

authorized by Constitution and statute," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005), they must look beyond the words of § 1432(a) for a source of subject matter jurisdiction. In *Califano v. Sanders*, 430 U.S. 99, 106 n.6 (1977), the Supreme Court concluded that the phrase "in a court of competent jurisdiction" "seem[s] to look to outside sources of jurisdictional authority." Although 5 U.S.C. § 702 "makes clear that a person wronged by [federal] agency action 'is entitled to judicial review thereof,'" § 703 "suggests that this language was not intended as an independent jurisdictional foundation, since such judicial review is to proceed 'in a court specified by statute' or 'in a court of competent jurisdiction.'" *Id.*

The Supreme Court has never held that a statute permitting an entity to "sue and be sued" in a federal court "of competent jurisdiction" can be read, independently, to grant federal subject matter jurisdiction. Although Defendants cite *Red Cross*, none of the "sue and be sued" clauses reviewed by the Supreme Court, including the Red Cross charter, contained a clause requiring the federal court be "of competent jurisdiction." 505 U.S. at 252-57. *See, e.g., Rincon Del Sol, LLC v. Lloyd's of London*, 709 F. Supp. 2d 517, 523 (S.D. Tex. 2010) (distinguishing *Red Cross* on this basis and noting that "the Fannie Mae sue-and-be-sued clause differs from the Red Cross statute in that the Fannie Mae clause contains the words 'of competent jurisdiction,' whereas the Red Cross charter does not").

Moreover, contrary to Defendants' assertion in their removal papers, the Supreme Court's opinion in *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), is consistent with the premise that a "sue and be sued" clause containing the phrase "court of competent jurisdiction" is not an independent grant of original federal jurisdiction. In *Breuer*, the Court considered the FLSA's right to sue clause, which Defendants accurately quote as stating that an action "may be maintained ... in any Federal or State court of competent jurisdiction," *Id.* at 694

(quoting 29 U.S.C. § 216(b)). However, the Court never held that this language "provided sufficient basis for original federal jurisdiction" as alleged by Defendants. *See* Dkt. No.1 ¶ 68. Although the Court stated that "[t]here is no question that Breuer could have begun his action in the District Court" and cited § 216, Defendants neglect to clarify that § 216 creates a private right of action that specifically grants subject matter jurisdiction to federal courts. 29 U.S.C. § 216 ("An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction."). Thus this clause is inherently distinct from a "sue and be sued" clause in a corporate charter. Unlike a "sue and be sued" clause in a corporate charter, under which the exercise of judicial power is necessarily dependent upon an independent cause of action, the clause assessed in *Bruer* specifically created a cause of action and provided subject matter jurisdiction, for that cause of action, in federal courts. *See, e.g., Deveaux*, 9 U.S. at 85-86 .

The Seventh Circuit has held that language nearly identical to that of the FHLB charter was "better read as a waiver of sovereign immunity than as a grant of jurisdiction." *Western Sec. Co. v. Derwinski*, 937 F.2d 1276, 1278-79 (7th Cir. 1991) (interpreting 38 U.S.C. § 1820(a)(1), which "empower[ed] the Veterans' Administrator to sue or be sued in any court, state or federal, of competent jurisdiction"). The Northern District of Illinois specifically distinguished *Red Cross* in deciding whether 12 U.S.C. § 1723a(a) created original federal jurisdiction, holding that § 1723a(a)[12] "is distinguished by the phrase 'in any court of competent jurisdiction, State or Federal,' implying that one must look elsewhere to determine competence." *Poindexter v. Nat'l Mortg. Co.*, No. 94-5814, 1995 WL 242287, at *10 (N.D. Ill. Apr. 24, 1995); *accord Knuckles v. RBMG, Inc.*, 481 F. Supp. 2d 559, 563 (S.D. W. Va. 2007).

---

[12] 12 USC § 1723a(a) ("Each of the bodies corporate named in section 1717(a)(2) of this title shall have power . . . in its corporate name, to sue and to be sued, and to complain and to defend, *in any court of competent jurisdiction*, State or Federal." (emphasis added)).

### 2. Defendants Rely on a Mistaken Reading of *Red Cross*

The Supreme Court's decision in *Red Cross* does not relieve Defendants of their obligation to state an independent basis for jurisdiction. Contrary to Defendants' pleading, *Red Cross* simply does not hold that the mere "reference to federal courts in the [Red Cross] 'sue and be sued'" clause was "sufficient" to confer federal court jurisdiction. Rather, the Court held only that mention of federal courts was a necessary condition for federal court jurisdiction.[13] *Red Cross*, 505 U.S. at 255 ("These cases support the rule that a congressional charter's 'sue and be sued' provision *may* be read to confer federal court jurisdiction *if, but only if,* it specifically mentions the federal courts." (emphasis added)).

In writing for the majority in *Red Cross*, Justice Souter was careful to state "may be read" and "if, but only if" rather than "must be read" and "whenever," thus distinguishing between a necessary and a sufficient condition.[14]  *Id.*  As Judge Brown noted in her concurrence in *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Federal National Mortgage Ass'n v. Raines*, 534 F.3d 779, 796 (D.C. Cir. 2008) (quoting Blacks Law Dictionary 979 (deluxe 6th ed. 1990)), "the word 'may' is generally 'employed to imply permissive, optional or discretional, and not mandatory action.'" Thus, where a "sue and be sued" clause specifically references federal courts, a court *may* interpret it to confer federal jurisdiction, but is not *required* to so rule if the court determines that the particular statute in question was not intended to confer federal jurisdiction – for example where the remainder of the statutory text elicits a contrary meaning.

---

[13] The Red Cross charter authorized the Red Cross "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 33 Stat. 600, as amended, 36 U.S.C. § 2 (1992) (current version at 36 U.S.C. § 300105(a)(5)).

[14] Although Defendants cite the Seventh Circuit's opinion in *Roe v. O'Donohue*, 38 F.3d 298, 300 (7th Cir. 1994), *abrogated on other grounds*, 526 U.S. 344 (1999), nothing in that opinion supports Defendants' misreading of *Red Cross*'s necessary condition as a sufficient condition. Nor does that opinion establish any broad rule about "sue or be sued" provisions, as asserted by Defendants. Rather, the Seventh Circuit merely noted that the Supreme Court held that the Red Cross charter specifically "creates a species of federal-question jurisdiction."

Although Justice Souter's majority opinion does contain the words "necessary and sufficient to confer jurisdiction," Defendants quote this language out of context.  *See* Dkt. No. 1 ¶ 67.  The Court did not hold that mere mention of federal courts was "necessary and sufficient to confer jurisdiction."  Rather, at the beginning of its discussion of nearly a century 'of jurisprudence, the Court made a general comment that the Court's past "readings of ['sue or be sued'] provisions … placed Congress on prospective notice of the language necessary and sufficient to confer jurisdiction." *Red Cross*, 505 U.S. at 252.  However, the Court's synthesis of its prior cases resulted only in the observation that mention of federal courts was a necessary condition.  Although the intervening discussion addressed two cases in which "sue or be sued" clauses were found to be insufficient because they failed to mention federal courts, *Deveaux* and *Bankers Trust*, no case held that mere mention of federal courts was "sufficient."  The two clauses ultimately determined to confer federal jurisdiction were not held to be sufficient merely by virtue of their reference to federal courts. *Osborn v. Bank of U.S.*, 22 U.S. 738, 817 (1824);[15] *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447, 455-56 (1942).[16]  *See Pirelli*, 534 F.3d at 796 n.2 (Brown, J., concurring) ("Just because those cases are examples of sufficient jurisdictional language, however, does not mean *any* reference to federal courts *always* suffices even if statutory text indicates otherwise.").  Moreover, neither of these "sufficient" clauses contained a requirement that the federal court be "of competent jurisdiction."  *Osborn*, 22 U.S. at 817; *D'Oench, Duhme & Co.*, 315 U.S. at 455-56.

---

[15] The clause interpreted in *Osborn* stated that the bank shall be "made able and capable in law . . .  to sue and be used, plead and be impleaded, answer and be answered, defend and be defended, in all State Courts having competent jurisdiction, and in *any* Circuit Court of the United States . . . ."  *Osborn*, 22 U.S. at 817 (emphasis added).

[16] The Court held that "[t]his case . . . is here because a federal agency brings the action, and the law of its being provides, with exceptions not important here, that: 'All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States . . . ."  *D'Oench, Duhme & Co.*, 315 U.S. at 467-68.

### 3. *Pirelli* **Is Not Persuasive Authority**

The D.C. Circuit's heavily criticized opinion in *Pirelli* is not persuasive and should not be followed by this Court. In *Pirelli*, the court determined that a sue and be sued provision in the Fannie Mae charter conferred federal jurisdiction despite the presence of the words "court of competent jurisdiction." *Pirelli*, 534 F.3d at 784. However, the D.C. Circuit erroneously interpreted *Red Cross* to mean "that express reference to federal courts in a federally chartered entity's sue-and-be-sued clause was 'necessary *and sufficient* to confer jurisdiction.'" *Id.* (quoting *Red Cross*, 505 U.S. at 252 (emphasis added)). The language of the decision does not support this interpretation. *See, e.g., Rincon*, 709 F. Supp. 2d at 524 ("[T]his Court finds that *Red Cross* does not compel the conclusion that the "sue-and-be-sued" language in Fannie Mae's charter necessarily mandates a federal forum.").

Unsurprisingly, the D.C. Circuit was unable to find any support for this assertion in the majority opinion in *Red Cross*. Although the Court cites the *Red Cross* majority's discussion of the necessity of reference to federal courts, it is unable to cite any discussion of the sufficiency of such reference – since the majority never discussed this later point. *Pirelli*, 534 F.3d at 784. In fact, the only citation the D.C. Circuit could find in support of the sufficiency "principal" was the dissenting opinion of Justice Scalia. *Id.* (citing *Red Cross*, 505 U.S. at 265).[17]

Moreover, the D.C. Circuit dismissed "two district courts [that] ha[d] reached the contrary conclusion," each of which gave specific consideration to the "of competent jurisdiction clause." *Pirelli*, 534 F.3d at 786 (citing *Knuckles*, 481 F. Supp. 2d at 563; *Fed. Nat'l Mortg.*

---

[17] Because dissenting opinions often take poetic license in describing majority opinions, it is a rather unremarkable proposition that Courts should not look to dissenting opinions to interpret the meaning of a majority's opinion. *See, e.g.*, *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362 (2d Cir. 2002). In fact, Justice Souter, writing for the majority in *Red Cross*, recognized this principle, noting that "[t]he dissent is playful in manufacturing a conflict between our synthesis of the cases and the opinion in *Bankers Trust*." 505 U.S. at 257 n.9.

16

*Ass'n v. Sealed*, 457 F. Supp. 2d 41, 44-46 (D.D.C. 2006)).  Instead, the D.C. Circuit sided with

what it described as "the majority of district courts that have confronted the question since *Red*

*Cross.*"  *Pirelli*, 534 F.3d at 786.  However, none of the four cases the Court cited as being

representative of this "majority" view even addressed the "of competent jurisdiction" clause.

*Grun v. Countrywide Home Loans, Inc.*, No. 03-0141, 2004 WL 1509088, at *2 (W.D. Tex. July

1, 2004); *Connelly v. Fed. Nat'l Mortg. Ass'n*, 251 F. Supp. 2d 1071, 1073 (D. Conn. 2003); *C.C.*

*Port, Ltd. v. Davis-Penn Mortg. Co.*, 891 F. Supp. 371, 372 (N.D. Tex. 1994) *aff'd*, 58 F.3d 636

(5th Cir. 1995); *Peoples Mortg. Co. v. Fed. Nat'l Mortg. Ass'n*, 856 F. Supp. 910, 917 (E.D. Pa.

1994).  Rather each simply concluded, without discussion, that federal jurisdiction existed. *Id.*

Not surprisingly, in *Rincon*, the court found that the two decisions rejected by *Pirelli* – *Knuckles*

*v. RBMG, Inc.* and *Federal National Mortgage Ass'n v. Sealed* – were more persuasive than

*Pirelli*.  *Rincon*, 709 F. Supp. 2d at 524 n.3.

The lack of adversarial briefing on the jurisdictional issue further undercuts the

persuasive force of *Pirelli*.  As Judge Brown noted in her separate concurrence, "[a]ll parties in

[the] litigation teamed up to manufacture jurisdiction." *Pirelli*, 534 F.3d at 795.

**4.     Pirelli Has Been Rejected by Courts That Have Carefully Evaluated "Sue and Be Sued" Clauses Analogous to the Provision in the Bank's Charter**

Significantly, all of the district courts that have since evaluated the issue have rejected

*Pirelli*, finding other precedent more persuasive.[18]  The Southern District of Texas explicitly

rejected *Pirelli*'s analysis in considering the same Fannie Mae charter.  *See Rincon*, 709 F. Supp.

2d at 523 ("*Pirelli* is not binding on this Court, and, given other courts' more persuasive

analyses, the Court finds that *Red Cross* does not compel a decision in this case that original

---

[18] Although *In re Fannie Mae 2008 Securities Litigation*, No. 08-7831, 2009 WL 4067266, at *3 (S.D.N.Y. 2009) cited *Pirelli* when it asserted that Fannie Mae's "sue and be sued clause" conferred federal jurisdiction, it did so without any analysis.

jurisdiction exists."). The court in *Rincon* held the Fannie Mae charter required "an independent source of subject matter jurisdiction . . . because [it] . . . differs distinctly from the language with which the Supreme Court was confronted in *Red Cross*" – specifically it "contains the words 'of competent jurisdiction,' whereas the Red Cross charter does not." *Id. See also Fed. Nat'l Mortg. Ass'n. v. De-Savineau*, No. 10-1106, 2010 WL 3397027, at \*1 (C.D. Cal. Aug. 25, 2010) (comparing "sue or be sued' clause in Fannie Mae charter, 12 U.S.C. § 1723a(a), with express grant of jurisdiction in Freddie Mac charter, 12 U.S.C. § 1452(f), and concluding that "the governing statute does not confer federal subject matter jurisdiction on actions involving Fannie Mae, as does the statute governing Freddie Mac").

Most recently, as noted above, the Western District of Washington rejected Defendants' removal arguments in *FHLB Seattle PLMBS Litig.* and remanded similar PLMBS litigation to state court. In doing so, the court specifically rejected *Pirelli* and concluded that the "sue or be sued" clause in the FHLB charter is not an independent grant of original federal jurisdiction. *FHLB Seattle PLMBS Litig.*, 2010 WL 3512503, at \*1-2.

### 5. Neither the Bank, Nor This Court, Are Bound By Legal Arguments Made by a Distinct Entity in a Distinct Legal Proceeding

Defendants' reference to the litigation strategy of the Federal Home Loan Bank of Des Moines ("FHLB Des Moines") is not relevant to this action. The Bank is a distinct entity from FHLB Des Moines with different members, management, and lawyers. FHLBC was not involved in either of the actions Defendants cite, made no effort to coordinate legal strategies with FHLB Des Moines, and had no opportunity to protect its own interests in those actions. In fact, FHLBC was not aware that FHLB Des Moines had taken that legal position until Defendants first raised this argument in the *FHLB Seattle* litigation. Lundstrom Decl. ¶¶ 6-9.

In any event, subject matter jurisdiction cannot be created by estoppel or by a wavier of an argument against jurisdiction. Rather, it is a fundamental threshold that must be established in every case before a court can proceed. *See, e.g.*, *U.S. v. Cotton*, 535 U.S. 625, 630 (2002). Positions taken by a bank that is not a party to these actions simply have no bearing on this Court's analysis of its own subject matter jurisdiction.

## D.     The Bank's Action is Not "Related To" Any Bankruptcy Proceeding

Certain of the Defendants[19] ("the Bankruptcy Removing Defendants") argue that the Bank's claims are "related to" the Title 11 bankruptcies of Fremont Investment & Loan, New Century Mortgage Corp., NC Capital Corp., and Credit-Based Asset Servicing and Securitization LLC and therefore subject to federal jurisdiction under 28 U.S.C. § 1334(b). *See* Dkt. No. 1 ¶ 72. The Bankruptcy Removing Defendants have failed to provide any factual basis for the claim that these entities owe them indemnification. Moreover, none of the Defendants make any showing that the alleged indemnity claims could be asserted in any of the bankruptcies, or that if asserted the claims would have any material value or economic effect on the bankruptcy cases.[20] Given that indemnity claims of the type the Defendants assert are subordinated to other claims in bankruptcy under 11 U.S.C. § 510(b), *see, e.g., In re Mid-Am. Waste Sys., Inc.,* 228 B.R. 816 (Bankr. D. Del. 1999), it is a virtual certainty that even if the indemnity claims could be asserted, there would be zero recovery on them and they would therefore have zero effect on the subject bankruptcy cases.[21] In short, the Defendants argue that the inchoate, extremely attenuated, likely

---

[19] *See* Dkt. No. 1, table at ¶ 72.

[20] The claim bar dates passed in the bankruptcy of Fremont General Corp. on November 10, 2008, and in the bankruptcies of New Century Mortgage and NC Capital on August 31, 2007.

[21] Although the time for filing claims has not elapsed in one bankruptcy case, *In re Credit-Based Asset Servicing and Securitization, LLC, et al.*, No. 10-16040 (Bankr. S.D.N.Y. 2010), the debtor's summary of schedules (Dkt. No. 36, at 8) lists assets of $23.7 million and liabilities of $2.16 **billion**, making payment in full of the claims (a prerequisite to any payment in subordinated claims) extremely unlikely.

time-barred, legally subordinated, and almost certainly worthless indemnity right that they *might*

have against the bankrupt entities create federal jurisdiction over this action. Such is not the law.

As to the substance of the bankruptcy argument there are (at least) three reasons

defendants fail to satisfy their removal burden. First, the Bank's claims are not "related to" any

bankruptcy proceedings because the actions cannot have any direct effect on the bankruptcy

proceedings. Second, even if this court could exercise jurisdiction under § 1334(b), it should

remand on equitable grounds pursuant to 28 U.S.C. § 1452(b). Third, and alternatively, this

court should remand pursuant to the abstention provisions of 28 U.S.C. §§ 1334(c)(1) or (c)(2).

### 1.      Federal Jurisdiction Does Not Lie Under § 1334(b)

The Bankruptcy Removing Defendants argue that because they will be seeking

indemnification from bankrupt entities, the Bank's claims in this suit are "related to" the

bankruptcies of these loan originators. Putting aside whether the Bankruptcy Removing

Defendants will in fact seek indemnity from bankrupt mortgage lenders, the Seventh Circuit test

for determining "related to" bankruptcy jurisdiction is as follows:

> A case is 'related' to a bankruptcy when the dispute 'affects the amount of
> property for distribution or the allocation of property among creditors.'

*In re FedPak Sys., Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1996) (citations omitted). Furthermore,

the Seventh Circuit interprets "related to" jurisdiction narrowly "out of respect for Article III…as

well as to prevent the expansion of federal jurisdiction over disputes that are best resolved by the

state courts." *Id.* at 214 (citation omitted); *see also In re Kubly*, 818 F.2d 643, 645 (7th Cir.

1987) (the "limited jurisdiction" of the bankruptcy court "may not be enlarged by the judiciary

because the judge believes it wise to resolve the dispute").

Courts in this Circuit have rejected "related to" jurisdiction where, as here, defendants

sought jurisdiction on the grounds that they *planned* to assert a claim for indemnification against

a bankrupt entity. *See, e.g., Kalamazoo Realty Venture Ltd. P'ship v. Blockbuster Entm't Corp.*, 249 B.R. 879, 884-85 (N.D. Ill. 2000) ("[A] potential indemnity claim against the debtor does not necessarily impact estate property, and therefore does not presumptively confer on the bankruptcy court 'related to' jurisdiction over an otherwise unrelated matter."); *In re Green*, 2109 B.R. 556, 560 (Bankr. N.D. Ill. 1997) ("The mere possibility of some effect from an indemnification claim is not enough to pose 'related to' jurisdiction.").

This logic applies with equal force here, where the Bankruptcy Removing Defendants effectively ask this Court to bootstrap this entire action into federal court because if the Defendants lose this case they might later seek indemnification from four bankrupt entities. As noted above, the deadline for filing claims is long passed as to three of the entities. Moreover, indemnification is not automatic; indeed, the Bankruptcy Removing Defendants will have to allege and prove that the bankrupt mortgage lenders misrepresented the loans that they sold to the Defendants. Standing in the way of this argument, no doubt, will be the exact opposite argument that the Bankruptcy Removing Defendants likely will make in this case. Thus, it is questionable, at the very least, whether the Bankruptcy Removing Defendants will in fact seek indemnity from the bankrupt mortgage lenders. Further, even if they do seek indemnity, as noted above, the claims will be subordinated to other claims in the subject bankruptcies under 11 U.S.C. § 510(b) and will therefore almost certainly be worthless and have no effect whatsoever on the bankruptcy cases. At any rate, whatever inconsistent positions the Bankruptcy Removing Defendants may need to take in a subsequent indemnity action, the fact remains that they will be free to pursue whatever indemnity rights they have in a separate action if they lose this one. Only 8 of the 38 securities at issue in this case, moreover, are even alleged to contain loans originated by the bankrupt defendants. *See* Dkt. No. 1 ¶ 72.

2.      **Even if This Court Found This Action To Be "Related To" a Bankruptcy Proceeding, It Should Remand on Equitable Grounds**

Even if this Court concludes that this Action is "related to" a bankruptcy under § 1334(b), the Action should still be remanded to state court on equitable grounds.  28 U.S.C. § 1452(b), the bankruptcy removal statute, provides that "the court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  In the Seventh Circuit, there are seven factors to consider in balancing the equities:

> (1) there is duplication of judicial resources or uneconomical use of judicial resources; (2) the remand will adversely affect the administration of the bankruptcy estate; (3) the case involves questions of state law better addressed by a state court; (4) there are comity considerations; (5) there is prejudice to unremoved parties; (6) the remand lessens the possibility of inconsistent results; and (7) the court where the action originated has greater expertise.

*Baxter Healthcare Corp. v. Hemex Liquidation Trust*, 132 B.R. 863, 867-68 (N.D. Ill. 1991).

"[N]o one factor is necessarily determinative," *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993), the factors are to be applied flexibly, *Pio v. Gen. Nutrition Cos.*, No. 06-2140, 2006 WL 3147721, at *4 (N.D. Ill. Oct. 31, 2006), and generally any one of the factors can be sufficient for equitable remand, *Browning v. Navarro*, 743 F.2d 1069, 1077 (5th Cir. 1984).  Here, the equities weigh heavily in favor of remand.

Factors (3), (4) and (7) all point heavily toward remand to the Illinois state court, which is presumptively the preferred forum to adjudicate claims arising under the Illinois Securities Law and the Illinois common law of negligence.  Remand would also further any comity considerations due the state court (factor (4)): "whenever possible, state courts should decide issues of state law, particularly when, as here, state-law claims were sued on originally in state court."  *Klohr v. Martin & Bayley, Inc.*, No. 05-0456, 2006 WL 1207141, at *5 (S.D. Ill. May 4, 2006).

Further, even if this court found (notwithstanding the Seventh Circuit's restrictive standard as discussed in *Fedpak*) this Action to be "related to" a bankruptcy proceeding, the relation would be so remote that it could not possibly adversely affect the administration of the bankruptcy estate (factor (2)); indeed, any direct effect on the administration of the estate would only arise from some subsequent proceeding between the defendants and the bankrupt entities.

Factors (1), (5), and (6), also weigh in favor of remand on equitable grounds.  While all Defendants have joined the notice of removal, only certain defendants have indemnity claims against bankrupt entities, and therefore only the claims against these defendants, relating only to the securities that contain loans originated by the bankrupt entities, are plausibly even remotely "related to" the bankruptcy proceeding.  Therefore, this court could only possibly have "related to" bankruptcy jurisdiction pursuant to § 1334(b) over those claims.  If this court found that it had "related to" bankruptcy jurisdiction over certain claims as to the Bankruptcy Removing Defendants, decided not to remand on equitable grounds, and severed and remanded the claims against the remaining defendants and/or the remaining 30 securities for lack of subject matter jurisdiction, the Bank could be forced to litigate its substantially similar claims against all Defendants in two or more separate courts.  This would substantially increase the costs of litigation and force two or more court systems to simultaneously administer actions that would be most efficiently managed together.  Dividing the cases in this manner would create a risk of inconsistent verdicts, which could be easily avoided by remanding the case in its entirety to state court on equitable grounds.  Indeed, the Western District of Washington equitably remanded a

set of eleven FHLB Seattle cases to state court, largely on comity grounds.[22]  *See FHLB Seattle*

*PLMBS Litig.*, 2010 WL 3512503 at *7.

### 3.  The Court Should Remand Because It Must Abstain From Exercising Jurisdiction Pursuant to Section 1334(c)(2).

Even if an action is allegedly "related to" a bankruptcy proceeding, § 1334 provides for

mandatory abstention from exercising jurisdiction.  28 U.S.C. § 1334(c)(2). provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11…with respect to which an action could not have been commenced in a court of
> the United States absent jurisdiction under this section, the district court shall
> abstain from hearing such proceeding if an action is commenced, and can be
> timely adjudicated, in a State forum of appropriate jurisdiction.

Seventh Circuit courts apply abstention analysis as grounds for remand and consider four factors

in determining whether mandatory abstention is warranted:

> Mandatory abstention is appropriate where four criteria are met:  (1) the case is
> based on a state-law claim that, although related to a case under title 11, does not
> arise under title 11 or arise under a case under title 11; (2) there is no independent
> basis for federal jurisdiction for the claim other than the bankruptcy proceeding;
> (3) an action has been commenced in a state forum; and (4) the case could be
> timely adjudicated in state court.

*Klohr*, 2006 WL 1207141, at *2.[23]  All four elements exist here.  First, this case plainly does not

arise under Title 11 or under a Title 11 case.  Second, there is no basis for federal jurisdiction

other than the alleged "related to" bankruptcy jurisdiction. *See* Section III.B, C *supra*.  Third, this

action was commenced in a state forum, satisfying the third factor.  *Bates & Rogers Constr.*

*Corp.*, 97 B.R. at 907-908.  Fourth, the Bank respectfully submits that this case can be

adjudicated in state court in as timely a fashion as in federal court.

---

[22] The court, applying the Ninth Circuit's more liberal test for "related to" bankruptcy jurisdiction, found
(FHLBC believes wrongly) that it had jurisdiction, but nonetheless remanded on equitable grounds
pursuant to § 1452(b).

[23] *See also In re Demert & Dougherty, Inc.*, No. 01-7289, 2001 WL 1539063, at *7 (N.D. Ill. Nov. 30,
2001); *In re Bill Cullen Elec. Contracting Co.*, 160 B.R. 581, 585 (Bankr. N.D. Ill. 1993); *Bates &*
*Rogers Constr. Corp. v. Cont'l Bank, N.A.*, 97 B.R. 905, 907 (N.D. Ill. 1989).

Even if this Court does not remand pursuant to § 1334(c)(2), § 1334(c)(1) provides for discretionary abstention, allowing the district court to abstain from jurisdiction "in the interest of justice or in the interest of comity with state courts or respect for state law." The factors are substantially similar to those for equitable remand, and the analysis is the same. *In re Chapman*, 132 B.R. 153, 158 (Bankr. N.D. Ill. 1991). Thus, the Bank urges this Court to abstain from exercising "related to" bankruptcy jurisdiction for the reasons articulated *supra* with regard to the factors of equitable remand under § 1452(b).

In summary, because this case does not directly affect any bankruptcy, this Court does not have "related to" jurisdiction over this matter pursuant to § 1334(b). Even if this Court were to find that it had "related to" jurisdiction as to the claims against the Bankruptcy Removing Defendants, it would be inequitable to allow these defendants to bootstrap the entire case and all other defendants into federal court. This is especially true because it would be based on potential claims for indemnity relating only to the few securities at issue in this case that even contain loans originated by the bankrupt entities. All the equities weigh in favor of equitable remand pursuant to § 1452, and any one factor would be sufficient. Finally, this Court should remand this case to state court because it must abstain from exercising jurisdiction under § 1334 or, alternatively, remand because the considerations for permissive abstention weigh in favor of abstaining.

## IV.   CONCLUSION

For the reasons stated above, Defendants have failed to satisfy their burden of demonstrating that this Court has original federal jurisdiction. Therefore, this court should favor the Bank's choice of forum and remand this action to Illinois state court.

Dated this 17th day of December 2010.

KELLER ROHRBACK L.L.P.

By /s/ Amy Williams-Derry
  Lynn Lincoln Sarko
  lsarko@kellerrohrback.com
  Derek W. Loeser
  dloeser@kellerrohrback.com
  Amy Williams-Derry
  awilliams-derry@kellerrohrback.com
  1201 Third Avenue, Suite 3200
  Seattle, Washington 98101
  (206) 623-1900, Fax (206) 623-3384


  MINER, BARNHILL & GALLAND, PC
  George Galland
  ggalland@lawmbg.com
  Robert S. Libman
  rlibman@lawmbg.com
  14 West Erie
  Chicago, IL 60654
  (312) 751-1170 (Fax) (312) 715-0438

  KELLER ROHRBACK P.L.C.
  Gary A. Gotto
  ggotto@kellerrohrback.com
  3101 North Central Avenue, Suite 1400
  Phoenix, Arizona 85012
  (602) 248-0088, Fax (602) 248-2822

  ***Counsel for Plaintiff Federal Home Loan
  Bank of Chicago***

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2010, I electronically filed the foregoing

PLAINTIFF'S MOTION TO REMAND with the Clerk of Court using the CM/ECF System,

which will send notification of such filing to all attorneys of record at their email addresses on

file with the Court.

Dated: December 17, 2010

s/ Amy Williams-Derry
Amy Williams-Derry